**IN THE UNITED STATES BANKRUPTCY COURT FOR THE
EASTERN DISTRICT OF TENNESSEE**

In re

JEANNINE ANN CRAWFORD

                Debtor

Case No. 3:24-bk-31315-SHB
Chapter 7

**MEMORANDUM AND ORDER ON
<u>TRUSTEE'S OBJECTION TO CLAIM OF EXEMPTION</u>**

**APPEARANCES:**   LAW OFFICES OF MAYER & NEWTON
                    John P. Newton, Jr., Esq.
                    Kevin S. Newton, Esq.
                    Richard M. Mayer, Esq.
                    8351 E. Walker Springs Lane
                    Suite 100
                    Knoxville, Tennessee  37923
                    Attorneys for Debtor

                  F. SCOTT MILLIGAN, ESQ.
                    Post Office Box 12266
                    Knoxville, Tennessee  37912
                    Chapter 7 Trustee

**SUZANNE H. BAUKNIGHT
UNITED STATES BANKRUPTCY JUDGE**

Before the Court is the Trustee's Objection to Claim of Exemption ("Objection to Exemption") filed by F. Scott Milligan, Chapter 7 Trustee ("Trustee") on October 14, 2024 [Doc. 23], objecting to and seeking to disallow Debtor's claimed exemption in an annuity being paid monthly to Debtor.  As directed by the Court's Order entered April 3, 2025 ]Doc. 56], the parties filed Stipulations of Fact and Documents on May 2, 2025 [Doc. 58], consisting of seventeen stipulated facts[1] and attaching eight exhibits:

(1) Debtor's Amended Schedule C filed on November 6, 2024 [Doc. 58-1];

(2) a Confidential Settlement Agreement and Release in Full of all Claims ("Settlement") [Doc. 58-2];

(3) a Uniform Qualified Assignment and Release ("Qualified Assignment & Release") with an effective date of June 15, 2002 [Doc. 58-3];

(4) an American General Life Insurance Company Single Premium Immediate Annuity Policy ("Annuity") [Doc. 58-42];

(5) an Order Approving Transfer of Structured Settlement Payment Rights entered in the Roane County Circuit Court in In re J.C., No. 2024-CV-1 ("Wrongful Death Lawsuit"), on February 21, 2024 ("February 2024 Order") [Doc. 58-5];

(6) a Purchase Contract between Debtor and J.G. Wentworth Originations, LLC ("JGW") dated May 21, 2024 [Doc. 58-6];

(7) an Order Approving Transfer of Structured Settlement Payment Rights entered in the Wrongful Death Lawsuit on July 10, 2024 ("July 10 Order"); and

---

[1] The Court also takes judicial notice of material undisputed facts of record in Debtor's bankruptcy case. *See* Fed. R. Evid. 201(a).

[2] The copy of the Annuity filed by the parties reflects the payment schedule for Colton Adkins Shepherd and not Debtor as the annuitant; however, the parties stipulated that the document is the same policy as the annuity reflecting the payment schedule to Debtor as the annuitant. [Doc. 58 at ¶ 8; Doc. 58-4 at 3.]

(8) a letter from counsel for American General Life Insurance Company ("AGLIC")

to JGW dated July 3, 2024 ("July 2024 Letter") [Doc. 58-9].

Debtor and the Trustee filed briefs, respectively, on May 5 and May 16, 2025 [Docs. 59, 60], and

Debtor filed a reply brief on May 27, 2025 [Doc. 61]. As stated in the April 3 Order, the issues

to be resolved are "whether the payments on the annuity with American National Annuity are

property of the estate and, if so, whether the payments are exempt." [Doc. 56.] This is a core

proceeding pursuant to 28 U.S.C. § 157(b)(2)(A) and (O).

## I.  FACTS

Debtor filed the Voluntary Petition commencing this Chapter 7 bankruptcy case on July

30, 2024 [Doc. 1], and the Trustee was duly appointed. [Doc. 58 at ¶ 1.] Debtor scheduled an

interest in an "American National Annuity"[3] for an unknown value in her Schedule A/B, in

which she claimed an exemption pursuant to Tennessee Code Annotated § 26-2-111(1)(D) in

Schedule C. [Doc. 58 at ¶ 2; Doc. 1 at 24, 29.] The Trustee objected to the exemption, arguing

that the cited statute was inapplicable to the Annuity because it and the payments from which it

arose resulted from the wrongful death claim for her former husband, Phillip Shepherd, who was

killed in a car accident in Oklahoma on February 11, 2002. [Doc. 23; Doc. 58 at ¶¶ 3, 5.] Debtor

subsequently amended Schedule C on November 6, 2024 [Doc. 32 at 11-12; Doc. 58-1], to

change the statutory basis for the exemption to Tennessee Code Annotated § 56-7-203; however,

the Trustee stood on his objection that Debtor is not entitled to exempt the payments under the

Annuity. [Doc. 58 at ¶ 4.]

Under the Settlement, Debtor was to receive (1) an initial cash payment of $1,055,809.00,

which included attorneys' fees; (2) a stream of payments in the amount of $4,500.00 monthly for

---

[3] The Annuity was issued by AGLIC. [*See* Doc. 58-4.]

Debtor's lifetime, with thirty years of those payments guaranteed; and (3) periodic lump sum payments totaling $575,000.00, with the final payment due on June 25, 2026 ("Lump Sum Payments").[4] [Doc. 58 at ¶ 6; Doc. 58-2.]  As authorized by the Settlement, Debtor executed the Qualified Assignment & Release, with American General Annuity Service Corporation ("AGASC") to make the future settlement payments to Debtor through the Annuity. [Doc. 58 at ¶¶ 7-8; Docs. 58-3, 58-4.]  Debtor's brother, Norvell Adkins, III, who served as guardian and next friend of Debtor's minor children in 2002,[5] was the original beneficiary of Debtor's guaranteed payments under the Settlement. [Doc. 58 at ¶ 9; Doc. 58-2; Doc. 58-3.]  "All rights of ownership and control of" the Annuity remained vested "exclusively" in AGASC pursuant to the Qualified Assignment & Release, and Claimants – Debtor and her minor children by and through Mr. Adkins – had no ownership or control of the Annuity, nor did they possess any rights against AGASC "greater than a general creditor." [Doc. 58-3 at 1.]  Further, the Qualified Assignment & Release provided that "[n]one of the Periodic Payments may be accelerated, deferred, increased, or decreased and may not be anticipated, sold, assigned or encumbered." [Doc. 58-3 at 1.]

The Annuity, which was issued by AGASC in June 2002, included the following general provisions:

**Payment Schedule**. The Payment Schedule is shown on page 3 of this policy. It shows:

1. The name of the Measuring Life;

2. The date of the first income payment;

3. The frequency of income payments;

---

[4] The Settlement also provided for payments to Debtor's and Mr. Shepherd's children, who were minors at the time. [Doc. 58 at ¶ 9; Doc. 58-2.]  Those payments are not at issue in this contested matter.

[5] Although Debtor's children were minors at the time the Annuity was issued, they now are adults "and no longer subject to any guardianship that might have existed or been provided for as part of the settlement process in 2002." [Doc. 58 at ¶ 9.]  The beneficiaries for each minor child under the Qualified Assignment & Release were his or her respective estates. [Doc. 58-3 at 2.]

4. The amount of each income payment; and

5. Guarantees of amounts to be paid.

**Measuring Life**. The Measuring Life is the person or persons upon whose date(s) of birth income payments are based. The Measuring Life is shown on the Payment Schedule.

**Payee**.  The Payee is the person(s) designated in the Application to receive income payments.

**Income Payments**.  Income payments will be paid to the Payee starting on the Annuity Date.  The amount of income payments and the Annuity Date are shown on the Payment Schedule.

No Payee or Beneficiary, of this policy shall have the power to commute or anticipate income payments. To the maximum extent permitted by law, payments will not be subject to:

    1. Transfer (any attempt to make such transfer is void); or

    2.  Assignment (any attempt to make such assignment is void); or

    3.  Alteration (except for misstatement of age or sex); or

    4.  Claims by creditors before any payment is due; or

    5.  Encumbrance by creditors or Beneficiary; or

    6.  Judicial or legal process by creditors.

[Doc. 58-4 at 4.]  The Annuity also included the following "Owner, Beneficiary, and

Assignment Provisions":

**Owner**. The Owner is as stated in the application unless later changed and endorsed on this policy. Subject to any endorsement to the contrary, the Owner will have the right to receive every benefit and exercise every right the policy confers or the Company allows.

**Beneficiary**.  The Beneficiary, as named in the application or later changed by the Owner will receive, subject to the terms of this policy, any payments which are due after the death of the Measuring Life. . . . .

**Change of Owner and Beneficiary**. The Owner or Beneficiary may be changed by the Owner unless the previous designation provides otherwise. The change may be made by submitting a written request to the Company's Home Office.

. . . .

**Non-assignability**.  No Payee or Beneficiary of this policy has the power to assign any payments or benefits of this annuity policy.  Any attempt to make an assignment is void.

[Doc. 58-4 at 5-6.]

Notwithstanding multiple anti-transfer provisions in the Annuity, over the several years prepetition, Debtor contracted with JGW to transfer her right to receive funds (both Annuity and Lump Sum Payments (collectively "Periodic Payments")) under the Settlement in exchange for discounted, advance, cash payments. [Doc. 58 at ¶¶ 10-13.]  Each transfer to JGW was authorized by the Roane County Circuit Court in the Wrongful Death Lawsuit as required by and in compliance with section 47-18-2603 of Tennessee's SSPA.[6] [Doc. 58 at ¶ 10; Docs. 58-5, 58-7.]  Specifically, in February 2024, Debtor assigned $50,000.00 from her final Lump Sum Payment of $200,000.00 scheduled for June 2026 to JGW in exchange for a cash advance of $28,651.97. [Doc. 58 at ¶ 11; Doc. 58-5.]  Five months later, the Roane County Circuit Court authorized the assignment of $500.00 from Debtor's guaranteed monthly payments of $4,500.00 for the period of August 2024 through June 2032, in exchange for a cash advance from JGW to Debtor of $21,355.01, as evidenced by the Purchase Contract and memorialized in the July 2024 Order and the July 2024 Letter. [Doc. 58 at ¶ 12; Docs. 58-6, 58-7, 58-8.]

Specifically relevant to this contested matter, the Purchase Contract includes the following agreement:

---

[6] The Tennessee SSPA is found at Tennessee Code Annotated sections 47-18-2601 through 47-18-2607.

1. <u>**SALE OF THE PURCHASED PAYMENTS**</u>

A.  Upon the signing of this Contract and subject to certain conditions including Court Approval, You sell, transfer and assign to Us the right to receive the Purchased Payments specifically identified in the Disclosure Statement.

B.  We will pay You the Net Purchase Price as agreed to in the Contract Documents, subject to certain conditions, including meeting Our underwriting requirements, Court Approval and satisfactory completion of the Closing Documents. We will do this in exchange for You:

- selling the Purchased Payments to Us;
- changing the beneficiary of the Annuity Policy to Your estate and not changing it again until We have been paid all of the Purchased Payments;
- having any current beneficiaries waive their rights to the Purchased Payments; and
- fulfilling Your promise under this Contract.

C.  If We are buying only a portion of Your payments, this will have no effect upon Your rights in the unsold portion. You will continue to receive the unsold portion unless You have already sold or encumbered that portion. However, sometimes the Issuer, the Obligor or the court may require Us to receive the entire amount of Your payment. If so, We will then forward the portion of the payment still due to You and You hereby agree to this payment servicing arrangement.

[Doc. 58-6 at ¶ 1.]

The Purchase Contract expressly denominates the transaction as a sale, not a loan, and provides: "You [Debtor] are the sole and undisputed recipient of the right to the Purchases Payments, have the right to sell them free and clear of any Encumbrances [subject to court approval] and have not previously sold any of the Purchased Payments to any other Person." [Doc. 58-6 at ¶ 3.][7]  As stated in the July 2024 Letter, Debtor "represent[ed] and warrant[ed] that she has all right, title, and interest in and to the Assigned Payments[.]" [Doc. 58-8 at ¶ 2.]

Accordingly, as evidenced by the July 2024 Order and the July 2024 Letter, all remaining guaranteed monthly payments due under the Settlement are paid directly to JGW, which remits

---

[7] Under the terms of the Purchase Contract, JGW has the authority to cancel the contract based on Debtor's bankruptcy filing. [Doc. 58-6 at ¶ 5.E.]

the excess over the assigned amounts (i.e., $4,000.00 per month) back to Debtor. [Doc. 58- at ¶¶ 12-13; Docs. 58-6, 58-7, 58-8.]  As required by the Purchase Contract, Debtor changed her beneficiary under the Annuity to her "estate," but no other terms of the Annuity have been modified. [Doc. 58 at ¶¶ 14, 16.]

Thus, the Trustee seeks a determination that the following are property of the bankruptcy estate not subject to exemption:  (1) the unassigned portion of the guaranteed monthly payments (i.e., $4,000.00 per month that Debtor currently receives from the Annuity through JWG); (2) the non-guaranteed monthly payments of $4,500.00 that were not assigned to JWG (which are scheduled to commence as of July 2032); and the unassigned portion of the last Lump Sum Payment (i.e., $150,000.00) to be paid to Debtor in June 2026.  Debtor maintains that neither the Annuity nor any of the postpetition payments she receives from the Annuity are property of the estate based on the Annuity's terms, which includes an anti-alienation clause that she argues qualifies the Annuity as a spendthrift trust under Tennessee law.  In the alternative, Debtor argues that if the Annuity payments are property of the estate, they are exempt under the Tennessee statute. [Doc. 58 at ¶ 15.]  The Trustee argues that the Annuity does not constitute a spendthrift trust under Tennessee law and that the payments Debtor receives from JGW are property of the estate and are not exempt.

## II.  LEGAL ANALYSIS

Debtor's bankruptcy estate, consisting of all property and property interests that she owned at the time, was created at the filing of her petition. 11 U.S.C. § 541(a).  Although "[p]roperty interests are created and defined by state law," *Butner v. United States*, 440 U.S. 48, 55 (1979), "it is federal law, not state law, that determines when a debtor's property interest becomes property of the bankruptcy estate." *Church Joint Venture, L.P. v. Blasingame (In re*

*Blasingame*), 597 B.R. 614, 618 (B.A.P. 6th Cir. 2019); *see also In re Todd*, 359 B.R. 863, 865

(Bankr. N.D. Ohio 2007) ("[F]ederal law controls what property interests are including within

the bankruptcy estate, while state law is relevant when determining the nature and existence of a

debtor's rights in property.").  Further, the scope of § 541 is intended to be broad to achieve

congressional intent. *In re Town Ctr. Flats, LLC*, 855 F.3d 721, 727 (6th Cir. 2017) (citing

*United States v. Whiting Pools, Inc*., 462 U.S. 198, 204 (1983)).  Accordingly, in addition to

property interests of the debtor as of the petition date, property of the estate includes interests

that a debtor acquires postpetition, certain inheritances, property settlements, funds received as a

beneficiary to a life insurance or death benefit policy, and interests that are otherwise subject to a

provision that restricts or conditions the debtor's ability to transfer property under an agreement

or applicable nonbankruptcy law. 11 U.S.C. § 541(a)(5), (6), (7) and (c)(1).

     Notwithstanding the breadth of § 541, the Bankruptcy Code allows debtors, through 11

U.S.C. § 522(b), to exempt certain property interests to ensure that debtors will retain sufficient

property for their essential needs and to achieve a fresh start. *See Clark v. Rameker*, 573 U.S.

122, 129 (2014).  Because Tennessee has "opted out" of the federal exemptions under § 522(b),

Debtor may utilize only Tennessee's statutory exemptions.  Exempted property is "subtracted

from the bankruptcy estate and not distributed to creditors.  Exemptions are determined as of the

date upon which the bankruptcy case is commenced, are construed liberally in favor of debtors,

and should be construed in light of the purpose for which they are created." *In re Kennedy*, 552

B.R. 183, 189 (Bankr. E.D. Tenn. 2016) (citation modified).  Tennessee law includes a "long-

standing rule . . . that exemption statutes are to be liberally construed." *In re Hogue*, 286 S.W.3d

890, 894 (Tenn. 2009).  The Trustee, who objected to Debtor's exemption under Federal Rule of

Bankruptcy Procedure 4003(b)(1), bears the burden of proving by a preponderance of the

evidence that Debtor is not entitled to her claimed exemption.  Otherwise, the claimed exemption

"retains its prima facie presumption of correctness and will stand." *In re Kennedy*, 552 B.R. at

189 (citation modified) (citations omitted); Fed. R. Bankr. P. 4003(c).

### A.  Does the Annuity Constitute a Spendthrift Trust Under Tennessee Law so that it is Not Property of the Estate?

The breadth of § 541 is limited by other provisions of the Bankruptcy Code, including

subsection (c)(2), which provides that "[a] restriction on the transfer of a beneficial interest of the

debtor in a trust that is enforceable under applicable nonbankruptcy law is enforceable in a case

under this title." 11 U.S.C. § 541(c)(2).  Subsection (c)(1) makes clear, however, that a

restriction on the transfer of a debtor's interest that is contained in an agreement, instrument, or

under nonbankruptcy law does not remove that interest from property of the estate.  That is, only

a restriction on transfer that arises from a trust operates to remove the debtor's interest from

property of the estate.  Thus, "[d]espite an anti-alienation clause, an annuity may still become

property of the bankruptcy estate if it does not qualify as a trust. . . , [and] the mere inclusion of

such an anti-alienation provision in an annuity contract does not alone bring it within the scope

of § 542(c)(2)." *In re Soori-Arachi*, 600 B.R. 153, 160 (Bankr. D.R.I. 2019).

Debtor argues that under Tennessee Code Annotated section 35-15-502 and the reasoning

stated by the bankruptcy court in *J.G. Wentworth, SSC, L.P. v. Goins* (*In re Goins*), No. 00-

61087, Adv. No. 00-6067, 2002 Bankr. LEXIS 1736 (Bankr. E.D. Ky. Dec. 19, 2002), the

Annuity constitutes a spendthrift trust and is not property of the estate.  The Court rejects this

argument as contrary to Tennessee law and to a plethora of bankruptcy decisions that stand in

opposition to the reasoning of *In re Goins*.

Under Tennessee law, proof of a trust requires, at a minimum, "a grantor or settlor who

*intends* to create a trust; a corpus (the subject property); a trustee; and a beneficiary." *Myers v.*

*Myers*, 891 S.W.2d 216, 218 (Tenn. Ct. App. 1994). The term "spendthrift provision" is defined

by the Tennessee Uniform Trust Code[8] ("TUTC") as "a term of a trust which restrains both

voluntary and involuntary transfer of a beneficiary's interest." Tenn. Code Ann. § 35-15-

103(31). The TUTC further provides:

> (a) A spendthrift provision is valid only if it restrains both voluntary and involuntary transfer of a beneficiary's interest.
>
> (b) A term of a trust providing that the interest of a beneficiary is held subject to a "spendthrift trust," or words of similar import, is sufficient to restrain both voluntary and involuntary transfer of the beneficiary's interest.
>
> (c) A spendthrift provision applies to all beneficial interests, including distribution interests and remainder interests.
>
> (d) A beneficiary may not transfer an interest in a trust in violation of a valid spendthrift provision and a creditor or assignee of the beneficiary may not reach any of, the interest, or a present, future or prospective distribution at the trust level. Similarly, no creditor or assignee of the beneficiary may force any distribution from the trust. This subsection (d) remains applicable regardless of the beneficiary's potential right to force a distribution under § 35-15-814.
>
> (e) Notwithstanding any other provision of this section to the contrary, regardless of whether a beneficiary has any outstanding creditor, a trustee, cotrustee or other fiduciary of a trust subject to a spendthrift provision may directly pay any expense on behalf of such beneficiary and may exhaust the income and principal of the trust for the benefit of such beneficiary. No trustee, cotrustee or other fiduciary is liable to any creditor for paying the expenses of a beneficiary under a trust subject to a spendthrift provision. This subsection (e) remains applicable regardless of whether the beneficiary for whom such direct payment was made held a mandatory, support, discretionary or remainder interest.

Tenn. Code Ann. § 35-15-502.

A valid spendthrift provision under the TUTC would be recognized under § 541(c)(2)

because such a provision would restrict "the transfer of a beneficial interest of the debtor in a

trust." As the comment to section 35-15-502 makes clear:

> A valid spendthrift provision makes it impossible for a beneficiary to make a legally binding assignment or transfer, but the appropriate fiduciary may voluntarily

---

[88] The TUTC, first adopted in 2004, is found at Tennessee Code Annotation sections 35-15-101 through 35-15-1301.

choose to honor such beneficiary's purported assignment or transfer, such being in reality a revocable direction or request to the trustee to pay amounts otherwise distributable to the beneficiary to the purported assignee. Note that under the immediately preceding sentence a beneficiary's purported assignment relative to a discretionary interest may have little if any practical effect. That is because the amounts "otherwise distributable to the beneficiary" are subject to the trustee's discretion. An appropriate fiduciary is protected, and is under no liability for, honoring such beneficiary's request, but must cease doing so upon instruction from such beneficiary. Should an appropriate fiduciary decide to honor such beneficiary's request, such fiduciary can decide to cease to so honor it and may recommence distributions to the beneficiary at anytime. Moreover, because the beneficiary has not made a binding transfer, such beneficiary can withdraw the beneficiary's direction but only as to future payments.

*Id.*, cmt. Thus, in Tennessee, the beneficiary of a spendthrift trust may voluntarily transfer or assign rights to trust benefits, but such a voluntary assignment does not remove the spendthrift restrictions on involuntary attempts to reach the trust benefits.

Accordingly, Debtor's assignment of the Annuity to JGW would not be fatal to her argument that § 541(c)(2) removes the Annuity from property of the estate *if* the Annuity were a trust. Because, however, the provisions of the TUTC only apply to a trust, the question here is whether the Annuity is a trust. The Court finds that it is not.

Applying the former version of Tennessee's spendthrift-trust statute, Judge John Cook of this Court held that a debtor's "contractual right to receive periodic payments under [a] settlement agreement" was not a spendthrift trust as defined in Tennessee and was not excepted from the debtor's bankruptcy estate under § 541(c)(2). *In re Cooper*, 135 B.R. 816 (Bankr. E.D. Tenn. 1992). There, the debtor entered into an agreement to receive periodic payments for life through an annuity after settlement of a personal injury case. *Id*. at 817. Similar to the Annuity here, the annuity contract was owned exclusively by the insurance company and the contract provided that periodic payments to the debtor were "not subject in any manner to anticipation, alienation, sale, transfer, assignment, pledge or encumbrance" by the debtor. *Id*.

After first finding that "[t]he debtor's contractual right to receive periodic payments under the settlement agreement f[ell] within the definition of property of the estate contained in § 541(a)(1)," the court addressed the debtor's argument that the payments were excepted by subsection (c)(2) as a spendthrift trust enforceable under Tennessee law. *Id*. at 817-19.  The statute then in effect, which predated the TUTC,[9] included three requirements for a spendthrift trust:  "(1) the property so held must have proceeded from another person; (2) the property must have been held in trust for the debtor, not by the debtor; and (3) the trust must have been declared by a will duly recorded or deed duly registered." *Id*. at 819 (citations omitted).

The court then focused on whether the settlement agreement formed the required trust res:

> The requirement that the property forming the res of the trust come from a person other than the debtor satisfies in part the justification for allowing spendthrift trusts to be placed beyond the reach of the debtor's creditors. When the trust property is donated by someone other than the debtor, the spendthrift trust restriction on the rights of the debtor's creditors does not deprive them of any property they might otherwise have been able to reach. This would not be true, however, if the trust is established with the debtor's property. In such a case, the debtor would be considered the settlor of the trust and the trust would not qualify as a true spendthrift trust under state law.

> There is no doubt that had the debtor not settled her state lawsuit before filing her bankruptcy case, the trustee would have been entitled to assume the debtor's cause of action for the benefit of the bankruptcy estate; likewise, there is no doubt that had the debtor settled her state lawsuit entirely for a lump-sum cash payment, the trustee would have been entitled to those funds over and above any personal property exemption claimed by the debtor. What has happened in this case is that the debtor has exchanged her prepetition cause of action for a contractual right to receive periodic payments in the future. The fact the debtor has exchanged one form of property owned by her prepetition, namely her state cause of action, for another form of property, namely a contractual right to receive periodic payments in the future, should not entitle the debtor to deprive her creditors of this property.

---

[9] The definitions section of the TUTC clearly do not apply her because the Annuity's provisions concerning "Owner" and "Beneficiary" do not identify a settlor or trustee as those terms are defined in the TUTC. *See* Tenn. Code Ann. § 35-15-103.

In effect, the property at issue in this case, the contractual right to receive future payments, was not donated by another, but was compensation for the release of the debtor's cause of action. When a debtor merely exchanges one form of property for another which thereafter becomes the res of a trust, the debtor is considered to be the settlor of the trust. Hence, the trust in this case, if in fact a trust was created, is not a valid spendthrift trust cognizable under Tennessee law.

*Id*. (citations omitted); *see also Walro v. Striegel (In re Striegel),* 131 B.R. 697 (S.D. Ind. 1991), *cited in Cooper*, 135 B.R. at 819-20 (deciding that structured settlement agreements did not qualify as spendthrift trusts, noting especially that there was no evidence that the parties themselves had intended to create a trust).

Debtor argues that *In re Cooper* no longer applies post-TUTC and urges this Court, instead, to follow the reasoning of *In re Goins*, which also predates the TUTC.  In *In re Goins*, the bankruptcy court relied on the Supreme Court's expansive interpretation of "trust" and "applicable nonbankruptcy law" in *Patterson v. Shumate*, 504 U.S. 753, 758 (1992), when the Court found that an ERISA plan was excluded from property of the estate by § 541(c)(2) because "[t]he natural reading of the provision entitles a debtor to exclude from property of the estate any interest in a plan or trust that contains a transfer restriction enforceable under any relevant nonbankruptcy law."  The *Patterson* Court acknowledged that ERISA plans are administered by a plan trustee or fiduciary and that the coordinating provisions of the Internal Revenue Code treat qualified ERISA plans as trusts. *See id.* at 758-60; *see also In re Usery*, No. 15-30017, 2020 WL 594144, at *3 (Bankr. W.D.N.C. Oct. 5, 2020) ("The Supreme Court reasoned that, because the pension plan was a qualified trust within the meaning of 26 U.S.C. § 206(d)(1) of ERISA and 26 U.S.C. § 401(a)(13), and the pension plan contained an anti-alienation provision, § 541(c)(2) excluded the debtor's interest from his estate.").

In *In re Goins*, the court examined the legislative history behind the federal Periodic Payments Settlement Act of 1982 (the "Act") to conclude that the annuity at issue was a trust

because of its treatment under the Act.  Based on the comments of Senator Max Baucus when he

introduced the initial version of the Act, the court found that an annuity for a wrongful death

settlement similar to the Annuity here was a trust within the scope of § 541(c)(2).  Noting that

Senator Baucus intended for the statute to protect periodic-payment settlements, which he stated

"are accomplished by a three-party arrangement involving the plaintiffs and the defendants and

the services of a third-party trustee who receives funds from the defendant and makes agreed

payments to the plaintiff," the *Goins* court stated that the Senator's "characterization of the third-

party assignee as a trustee indicate[d] [that] he envisioned a structured settlement periodic

payment plan as a trust." *Id*. at *42-43 (citation omitted).

      The Act amended the Internal Revenue Code to "deal[] with the tax consequences of

annuities issued in a settlement where the defendant and his liability insurer are released of all

liability, absolute and contingent." *In re Monarch Cap. Corp.*, 130 B.R. 368, 370 (Bankr. D.

Mass. 1991).  Notwithstanding Senator Baucus's "intent," however, nothing in the Act makes

settlements with periodic payments trusts under federal or state law.[10]

      The holding of *In re Goins* stands alone in treating as a spendthrift trust an annuity that

implements a settlement and qualifies for special tax treatment under the Internal Revenue Code,

as modified by the Act.  "[N]umerous . . . courts have concluded that structured settlements

including those with anti-alienation language are not trusts and therefore are property of the

bankruptcy estate." *Novak v. Drake* (*In re Drake*), No. 08-02118 ASD, 2012 WL 1095501, at *7

(Bankr. D. Conn. Mar. 29, 2012) (citing *In re Hendrickson*, 274 B.R. 138, 148 (Bankr. W.D. Pa.

2002); *In re Britton*, 288 B.R. 170, 173 (Bankr. N.D.N.Y. 2002); *In re Constantino*, 274 B.R.

---

[10] In response to the Act, numerous states, including Tennessee, passed legislation known as structured settlement protection acts ("SSPA") that restrict the ability of payees to transfer future periodic payments from a structured settlement. *See* Jay M. Zitter, Annotation, *Construction & Application of State Structured Settlement Protection Acts*, 27 A.L.R.6th 323 (2007).

580 (N.D.N.Y. 2002); *In re Cooper*, 135 B.R. 816, 820 (Bankr. E.D. Tenn. 1992); *In re Dees*,

155 B.R. 238, 240 (1992); *In re Striegel*, 131 B.R. 697 (S.D. Ind. 1991); *In re Riley*, 91 B.R. 389,

391 (Bankr. E.D. Va. 1988)); *see also In re Greenly*, 481 B.R. 299 (Bankr. E.D. Pa. 2012);

*Messer v. Maney* (*In re Messer*), No. AZ-11-1505-JuPaD, 2012 WL 762828 (B.A.P. 9th Cir.

Mar. 9, 2012); *In re Jackus*, 442 B.R. 365 (Bankr. D.N.J. 2011); *In re Kent*, 396 B.R. 46 (Bankr.

D. Ariz. 2008); *In re Sparks*, No. 03-385631, 2005 WL 1669609 (Bankr. W.D. Tenn. July 14,

2005).  Indeed, such agreements and SSPAs fall squarely within the plain language of §

541(c)(1)(A), which provides:  "Except as provided in paragraph (2) of this subsection, an

interest of the debtor in property becomes property of the estate . . . notwithstanding any

provision in an agreement, transfer instrument, or applicable nonbankruptcy law that restricts or

conditions transfer of such interest by the debtor[.]"

      The bankruptcy court for the Western District of Tennessee also examined periodic

payments under an annuity arising from the structured settlement of a personal-injury claim

(involving the same American General parties as here), finding them to be property of the estate

not excepted by § 541(c)(2). *In re Sparks*, 2005 WL 1669609.  The court focused on the fact that

Tennessee (and Texas, as the state specified in the qualified assignment's choice-of-law

provision) had enacted a SSPA to provide express procedures and guidelines for a party to obtain

approval to transfer the right to receive periodic payments from a structured settlement. *Id*. at 4

(citing Tenn. Code Ann. §§ 47-18-2601 to -2607).  The court recognized that "[n]othing in either

of the [Tennessee or Texas] acts prohibits attachment of the rights of the payee by a creditor of

the payee," but "each state provides for exemption of certain property interests from the claims

of creditors." *Id.*  Thus, the court concluded that "[w]ith no specific prohibition or absolute

restriction on transfers of interests under a structured settlement agreement in either federal or

state law, the Debtor's right to payment becomes property of the estate by virtue of section

541(c)(1)(A) notwithstanding the language in the Qualified Assignment prohibiting transfer." *Id*.

at *5.  The *Sparks* court then determined that the chapter 7 trustee could sell the debtor's rights

to receive the structured payments for the benefit of the bankruptcy estate. *Id*. at *5-6; *see also In

re Jackus*, 442 B.R. at 369 ("[T]he Debtors argued that the terms of a Unified Qualified

Assignment assigning the Annuity to Keyport contained anti-assignment provisions. However,

pursuant to § 541(c)(1)(A), the anti-assignment provisions in the Annuity are not strictly

enforceable. This is not only clear from the above-quoted statutory provisions, but also finds

support in the relevant case law.").

The Bankruptcy Court for the Eastern District of Pennsylvania also held that such

payments were property of the estate not excepted by § 541(c)(2). *In re Greenly*, 481 B.R. at

313. The *Greenly* court reviewed the debtor's interest in the property, looking to whether the

settlement was contingent and, finding that the parties had fully performed all obligations under

the agreement, determined that it was fully vested as of the petition date so that the debtor had a

property interest in the periodic payments from the annuity. *Id*. at 310-11.  The court then

concluded that the anti-assignment language in the settlement and annuity documents did not

create a spendthrift trust. *Id.* at 312-13.

This Court agrees with the reasoning of *In re Greenly* and many other courts that have

held similarly. *See, e.g.*, *In re Pipkins*, No. 13-30087DM, 2014 WL 2756552, at *6 (Bankr. N.D.

Cal. June 16, 2014) ("The court has not located any case law[11] in which the proceeds of a

structured settlement were found to be held in trust for a payee-annuitant and none appears to

---

[11] The Court surmises that the decision in *In re Goins* was not found by the *Pipkins* court because the *Goins* opinion
was not reported and is not available through Westlaw.

exist. In any event, the legal requisites for creation of a trust under California law have not been satisfied, such as manifestation of an intent to create a trust.")  As explained by the bankruptcy court for the District of Arizona:

> There is no trust instrument. There is no trustee. There is no individual or entity that has agreed to take on the task of trust administration, using the appropriate fiduciary standard to act in the interests of the trust beneficiary. There is no settlor. There is no transfer of funds into the Annuities as a res for a trust. Moreover, the Debtor . . . is simply a payee under the relevant documents. Such a term does not create the concomitant duty of any individual or entity acting on behalf of the Annuity to provide the normal fiduciary relationship of a trustee to a beneficiary.

*In re Kent*, 396 B.R. at 52.  The *Kent* court also considered "that although there is a beneficiary, the estate of Kimberly Kent, that beneficiary has no access to the funds so long as the payee is alive." *Id*. at 52 n.9.  Finally, the court noted that Arizona, like Tennessee, enacted statutory authority for the transfer of a party's rights to structured settlement payments to another even if an annuity might include anti-alienation provisions. *Id*. at 56-57; *see also In re Messer*, 2012 WL 762828, at *5 (finding that the debtor's argument that the Arizona "statutory restraint" on transfer equated to a spendthrift trust made "no sense when the statute itself authorizes transfers of structured settlement payments," which "is contrary to the very nature of spendthrift trusts").

Simply, the Tennessee SSPA is distinct from the TUTC.  As recently explained by the Tennessee Supreme Court in *Falls v. Goins*, 673 S.W.3d 173, 180 (Tenn. 2023):

> Courts are to "presume that the General Assembly is aware of its own prior enactments and knows the state of the law when it enacts a subsequent statute." *Lovlace v. Copley*, 418 S.W.3d 1, 20 (Tenn. 2013)  (citing *Lee Med., Inc. v. Beecher*, 312 S.W.3d 515, 527 (Tenn. 2010)).
>
> Further, when multiple statutes "relate to the same subject matter or have a common purpose," they are to be considered *in pari materia. In re Kaliyah S.*, 455 S.W.3d 533, 552 (Tenn. 2015). This principle requires courts to construe statutes "together" and "to give the intended effect to both" statutes. *Id*. at 548, 552. Under such circumstances, we seek to uncover "the most 'reasonable construction which avoids statutory conflict and provides for harmonious operation of the laws.'" *Id*. at 552 (quoting *Carver v. Citizen Utils. Co.*, 954 S.W.2d 34, 35 (Tenn. 1997)).

Aligned with the related-statutes canon of statutory interpretation, it is "based upon a realistic assessment of what the legislature ought to have meant," and is derived from the expectations that "the body of the law should make sense" and that "it is the responsibility of the courts, within the permissible meanings of the text, to make it so." Antonin Scalia & Bryan A. Garner, *Reading Law: The Interpretation of Legal Texts* 252 (2012).

Thus, this Court finds that the Annuity does not qualify as a trust so that it is not excepted from Debtor's bankruptcy estate under § 541(c)(2).  There is no evidence that the Annuity and its related documents meet the requirements for the formation of a trust under Tennessee law, and there is no proof that the parties to the Annuity intended to form a trust.  Nowhere in the Settlement Agreement, Annuity, Qualified Assignment & Release, February 2024 Order, July 2024 Order, or July 2024 Letter are the periodic payments or the Annuity referred to as a trust; nor is either AGASC or AGLIC referred to as a trustee.  Instead, the Annuity is an interest in property that falls within the provisions of § 541(c)(1), meaning that it is property of the estate.

Because the Annuity is not a trust that falls within the scope of § 541(c)(2), it is property of Debtor's bankruptcy estate pursuant to § 541(a) and (c)(1)(A), notwithstanding any anti-alienation provisions contained therein.

### B.  Are the Annuity Payments Exempt Under Tennessee Law?

Debtor argues that even if the Annuity payments are property of her estate, they nevertheless are exempt under Tennessee Code Annotated § 56-7-203, which states as follows:

The net amount payable under any policy of life insurance or under any annuity contract upon the life of any person made for the benefit of, or assigned to, the spouse and/or children, or dependent relatives of the persons, shall be exempt from all claims of the creditors of the person arising out of or based upon any obligation created after January 1, 1932, whether or not the right to change the named beneficiary is reserved by or permitted to that person.

Tenn. Code Ann. § 56-7-203 (2008).[12]  "[T]he intended purpose of this statute [is] to ensure that

beneficiaries are not deprived of benefits as the result of the claims of creditors of the insured."

*In re DeMarco*, 491 B.R. 236, 242 (Bankr. W.D. Tenn. 2013); *see also Neal v. First Alliance*

*Bank*, No. 13-2522, 2013 WL 5739701, at *3 (W.D. Tenn. Oct. 22, 2013), *aff'd*, 571 F. App'x

454 (6th Cir. July 9, 2014).

> As with federal statutory construction and interpretation, in Tennessee,
>
> when [the] Court is tasked with construing statutes, the most basic principle is that
> we seek to ascertain and give effect to the legislative intent without unduly
> restricting or expanding a statute's coverage beyond its intended scope. We must
> interpret a statute as a whole, giving effect to each word and making every effort
> not to interpret a provision in a manner that renders other provisions of the same
> statute inconsistent, meaningless or superfluous. A statute that has a clear meaning
> is to be enforced as written, and the legislature's intent is to be derived from the
> plain and ordinary meaning of the statutory language.

*Falls*, 673 S.W.3d at 180 (citation modified) (citations omitted).

The Trustee argues that the exemption does not apply for two reasons.  First, because

Debtor is no longer receiving the payments from ACASC but from JGW under the Purchase

Contract, which transferred the right of receipt from Debtor to JGW, the language of the

exemption statute no longer applies because the payment is now nothing more than a receivable

to Debtor. [Doc. 60 at 10.]  Second, if the payments to Debtor are from an annuity that falls

within the exemption statute, because Debtor's estate is the beneficiary, the Annuity is no longer

for the benefit of a spouse, child, or dependent relative. [*Id.*]  Debtor counters that because the

language of the statute allows for a beneficiary to be changed without limitation or effect as to

---

[12] This statute was amended in 2025, with an effective date of July 1, 2025, to include the following language:  "Use
of exempt funds does not change the classification of the funds from exempt to nonexempt." Tenn. Code Ann. § 56-
7-203 (2025). Because this case was filed before the amendment, the prior version applies and will be quoted in this
opinion, and the Court finds it unnecessary to analyze any impact of the revision.

the remainder of the statute, once the assignment to JGW ends, she could change the beneficiary and all payments would be exempt.  [Doc. 59 at 6-7.]

The Trustee offered no authority to support his argument that because Debtor receives her monthly payments from JGW after it withholds the assigned amount, the payments are not exempt; nor could the Court find any.  However, based on the Tennessee SSPA, the July 2024 Order, and the July 2024 Letter, the Court finds that the change in the payor under the Annuity and its supporting documents does not change the nature of the payments or remove them from the protections of section 56-7-203. JGW is merely a conduit for the Annuity payments to Debtor, which are paid over to Debtor after JGW takes its assigned portion.

The Tennessee SSPA details the procedures required for transferring the rights to a structured-settlement payment.  Specifically, section 47-18-2604(f) provides: "Neither the annuity issuer nor the structured settlement obligor may be required to divide any structured settlement payment between the payee and any transferee or assignee or between two (2) or more transferees or assignees."  AGASC was authorized by the July 2024 Order to pay "100% of the payment due and owing by AGLIC and AGASC on the Term that contains the Assigned Payment," and JGW was authorized to "retain the portion of the Term Payment that constitutes the Assigned Payment, and any previously assigned payment(s), and shall promptly remit to [Debtor] the remaining un-assigned portion, if any, of the Term Payment." [Doc. 58-5 at 3.] Under that authority, the July 2024 Letter outlined the process by which AGASC would remit the payments and the address to which it would send the payments. [Doc. 58-8 at ¶ 1.]  AGASC also expressly stated the following with respect to those payments:

> JGW and Crawford acknowledge and agree that, in the event Crawford, or any successor to Crawford's right to receive payments due under the Annuity, makes an assignment of all or part of the Remaining Crawford Payments to an entity other than JGW, then AGLIC shall have the discretion to appropriately reduce the Term

Payments delivered to JGW without prior notice to JGW. AGLIC and AGASC
expressly reserve all rights to object to or challenge future assignments by
Crawford. Crawford shall not have the right to require AGLIC to split the Term
Payments between JGW and any other party, but the Parties agree AGLIC may do
so within its own discretion. Nothing herein alters JGW's obligation to remit the
Remaining Crawford Payments to Crawford to the extent that the amount of a Term
Payment paid to JGW under the Servicing Arrangement exceeds the amount of the
Assigned Payment.

[Doc. 58-8 at n.1.]

Because AGASC maintained control over to whom Annuity payments would be sent and

could unilaterally, and without notice, alter the arrangement, the payments to Debtor were still

derived from the Annuity, with JGW merely acting as a conduit.  Based on these stipulated facts,

because the Court finds no authority to the contrary and exemptions are to be liberally construed

in favor of debtors, the Court rejects the Trustee's argument that a change in the payor will strip

an otherwise protected Annuity from falling within the exemption.

The Trustee's second argument, however, is correct.  The exemption does not apply

because the beneficiary is Debtor's estate.  "For the statute to apply and the exemption to be

available, . . . the policy [must] be made for the benefit of the spouse and/or children or (other)

dependent relatives of the insured." *In re DeMarco*, 491 B.R. at 242.[13]  The relevant point in

time for application of an exemption is the petition date. *In re Richards*, 642 B.R. 777, 784

(B.A.P. 6th Cir. 2022) ("A 'debtor may claim only those exemptions available at the time of the

bankruptcy petition filing[.]'" (citing *Holley v. Corcoran* (*In re Holley*), 661 F. App'x 391, 395

(6th Cir. 2016) (citing *In re Wengerd*, 453 B.R. 243, 250 (B.A.P. 6th Cir. 2011) (citing *White v.*

---

[13] In *In re DeMarco*, the court determined that four insurance policies were not exemptable when they insured the
debtors' daughters and were owned by the one of the debtors, with the debtors named as primary and/or contingent
beneficiaries.  The court rejected the debtors' argument "that the drafters of the statute intended to include owners
*who are not* the insured together with owners *who are* the insured in the class of persons whose interest in a policy is
exempt from the claims of creditors" because the purpose of the statute is to "protect[] the spouse and dependents of
the *insured* against the claims of creditors of the *insured*." *In re DeMarco*, 491 B.R. at 240-42.

*Stump*, 266 U.S. 310, 313, 45 S. Ct. 103, 104 (1924))))).  Because the beneficiary of the Annuity

on the petition date was not Debtor's "spouse and/or children, or dependent relatives of the

persons," Tenn. Code Ann. § 56-7-203, the exemption does not apply.

The Court finds unavailing Debtor's argument that she may change the beneficiary at the

end of the assignment period.  She asserts: "It is the Debtor's position that the Trustee cannot

defeat the Debtor's intrinsic right upon conclusion of the assignment to change her beneficiary as

stated under the terms of her Annuity agreement and contract." [Doc. 59 at 7.]  The right to

change a beneficiary has no impact on the applicability of the exemption in bankruptcy:  "The

statutory language of section 56-7-203 supports a finding that the Tennessee Legislature while

recognizing that beneficiaries could change over time, intended that the statute be applied to

those beneficiaries named without regard to how the proceeds of the policy might ultimately be

distributed." *In re Clemmer*, 184 B.R. 935, 939 (Bankr. E.D. Tenn. 1995).[14]  As noted by the

*Clemmer* court, "the legislature's intent expressed by the statute [is] to protect any life insurance

policy or annuity contract from creditors to the extent the beneficiary *presently* named is a

spouse, child, or dependent relative." *Id*. (emphasis added) (citation modified).  Here, the

stipulations make clear that the beneficiary at the petition date was not a qualifying beneficiary

for purposes of the exemption.

## CONCLUSION

For the reasons stated herein, the Court determines that the Annuity is not a spendthrift or

otherwise qualified trust within the scope of 11 U.S.C. § 541(c)(2) and, therefore, is property of

Debtor's bankruptcy estate. The Court also finds that although the Annuity satisfies Tennessee

Code Annotated section 56-7-203 to the extent that it is an annuity contract on the life of Debtor,

---

[14] The 1995 version of section 56-7-203 include the same language about changing the beneficiary. Tenn. Code Ann. § 56-7-203 (1995).

because it is not for the benefit of one of the statutorily named beneficiaries – i.e., Debtor's

spouse, child, or dependent relative – it is not exempt under the statute. The Trustee's Objection

to Exemption will be sustained.

FILED:  September 17, 2025

BY THE COURT

*s/ Suzanne H. Bauknight*

SUZANNE H. BAUKNIGHT
UNITED STATES BANKRUPTCY JUDGE